Parker, J.
This is a proceeding brought to obtain a reversal of the judgment of the court of common pleas. In the court below, Muriphy, as plaintiff, filed a petition in a civil action against the defendants in error, to which a general demurrer was sustained.
Afterward he filed an amended petition, to which a general demurrer, was sustained; he then filed a second amended petition, which upon motion, he was required to amend. Thereafter a general demurrer was sustained to this second amended j>etiton. He then filed his third amended petition, to which a general demurrer was sustained. By that time being tired out, and not de'siring to plead further, he allowed judgment to go against him upon the demurrer; and he now prosecutes error to •this court to obtain a reversal of that judgment. The third amended petition, omitting only a description of the oil leases therein referred to, reads as follows:
“Plaintiff states that the defendant, The Buckeye Supply Co., is a corporation duly organized and existing under and by virtue of the laws of the state of Ohio; that the said defend- • ant, The Buckeye Supply Co., filed its answer in an action pending in the court of common pleas of Wood county, Ohio, entitled The Ohio & Indiana Torpedo Co. v. Samuel B. Niece, et al., and numbered upon the docket of said court as No. #1,766, wherein said defendant alleged that the said Samuel E. Niece was indebted to it in a large sum, and that to secure *513 the payment of the same, the said Samuel E. Niece executed ■an assignment of the property hereinafter described to the defendant William Hardee, who was agent and trustee of the said The Buckeye Supply Co.
“That thereafter, to-wit: on the 2nd day of December, 1898, the said The Buckeye Supply Co. obtained a decree finding the amount due to it upon its said claim against the said Samuel E. Niece and ordering said property to- be sold and the proceeds of said sale to be applied to the payment of said indebtedness.
“That thereupon, upon the order of said defendant, an order ■of sale was issued to the sheriff of said Wood county, who proceeded to advertise and sell said lands.
“That thereafter, to-wit: on the 29th day of January, 1899, ■said sheriff by virtue of said order of sale, did offer and sell at public sale to the plaintiff, Daniel W. Murphy, he being the highest bidder therefor, all the said property.
“That thereafter the said sheriff made due return of his proceedings under said writ and asked to have said sale confirmed by the court.
“That thereafter, to-wit: on the 4th day of February, 1899, said Daniel W. Murphy filed his motion to vacate said sale, for the reason that there was no valid judgment or decree upon which to issue an order of sale, and for irregularity in the advertising and- sale of said property, and also on said date filed his motion to vacate the judgment and decree theretofore rendered therein. Said motions were duly argued and submitted to said court, and thereafter, to-wit: on the 18th day ■of August, 1899, the said court overruled said motions, and upon motion of the said The Buckeye Supply Co. confirmed ■said sale, the journal entry of said ruling of said court being approved and filed on or about the 30th day of August, 1899.
“That thereafter, to-wit: on the 5th day of September, 1899, the plaintiff herein paid to said sheriff of Wood county the purchase price therefor, being the sum of $4,500.
“That ‘thereafter, to-wit: ‘on the 10th day of May, 1900, the plaintiff tendered to the sheriff of Wood county, Ohio, the interest upon said purchase price from the date of said sale to the date of making said tender, which said tender was by said sheriff refused. That thereafter, to-wit: on the 1st day of August, 1900, the plaintiff tendered to the defendants, William *514 Hardee and the Buckeye Supply Co. the sum of $159.15 in good and lawful money of the United States, being the amount of interest upori said purchase price from the date of said sale, which said tender was refused by said defendants. That plaintiff is still the owner of said property.
“That at the time of said sale, to-wit: January 29, 1899, and prior thereto, the defendant, William Hardee was in possession-of the above described property, and was operating the same and producing oil therefrom by virtue of a conveyance made by the said Samuel E. Niece to him for the purpose of securing an indebtedness owed by the said Niece to the Buckeye Supply Co. as hereinbefore set forth; that the said William Hardee held said conveyance and operated said lease and produced oil therefrom in trust for the said The Buckeye Supply Co., and for the purpose of applying the proceeds thereof to the payment of said indebtedness.
“Plaintiff states that upon'the sale of said property by the sheriff on the 29th day of January, 1899, as aforesaid, a trust arose upon the part of said William Hardee to hold said property and turn the same over to the purchaser thereof, together with any and all oils that might be produced therefrom. That the said William Hardee remained in possession and continued to operate said lease and produce oil therefrom until on or about the 5th day of September, 1899. That no part of the oil produced from said lease from and after the 29th day of January, 1899, has been accounted for or turned over to the plaintiff. That plaintiff paid the expenses of pumping the oil produced from said property from the date of said sale. That the plaintiff is unable to state the amount of oil produced from said property or to state the sums, if any, paid out by the said Hardee, and the said The Buckeye Supply Co. in the care and operition of said leasehold property, and that the said defendants ikold and are liable to account to the plaintiff for all oil produced upon said above described premises from the date of said sale' above mentioned.
“Wherefore plaintiff prays that the defendants be required to answer and set forth fully the amount of oil received by them, or either of them, after the date of said sale to the plaintiff, and also to state explicitly what, if any, sums defendants, or either of them, have expended on account of the said proper *515 ty since the date of said sale, and that upon the hearing of this cause, the defendants, be required by proper decree of this court to account for and turn over to this plaintiff any and all oils that has been produced upon said lease since the date of said-sale, upon payment by the plaintiff of all necessary and actual expenditures that may have been made by the defendants, or either of them, in the operation of said lease, and for such other and further relief to which the plaintiff may be entitled either in law or in equity.”
The question, it will be observed, is as to the right of the plaintiff to require the defendants to account for the oil produced from these premises under these leases in the interim ■ between the date of the sale and the date of its consummation by payment of the purchase price and confirmation. Plaintiff in error maintains that the case comes within the principles laid down in the case of Jashenosky v. Volrath, 59 Ohio St., 540, [53 N. E. Rep., 46; 69 Am. St. Rep., 786]. Counsel for defendant in error undertakes to distinguish this case from that by pointing out that the property sold in this case was subject to levy and sale under execution at law — that is, such execution as may issue upon a personal judgment for money only; and he contends that in such case the title passes and the sale takes effect, as of'the date of the payment of the purchase money, and that the doctrine of relation back to the date of the sale applied in the case referred to does not apply in such a case as this; and in support of his contention that the property is subject to such levy and sale, he calls attention to a decision by this court — the case of Acklin v. Waltermier, 19 Ohio C. C., 372. In that case we had under consideration levies and sales made under executions issued upon personal judg-. ments, and we held that property of this character was subject to levy and sale as ordinary chattel property; but we did not hold, and there is nothing in that decision to support the contention, that such property might not.be brought to sale under an order of sale issued upon a decree rendered upon the foreclosure of a mortgage or other lien thereon. Now, it will be observed that in the case at bar, the third amended petition sets forth that these leases were pledged and assigned by Samuel E. Niece, the lessee, to the defendants, as security for an indebtedness of said Niece to the defendants, and that in the *516 Wood county common pleas court, a decree was obtained by The Buckeye Supply Co. finding the amount due to it upon its said claim against Samuel E. Niece, and ordering said property sold, and the proceeds of said sale applied to the payment of said indebtedness; and that an order of sale was issued under that decree; that the sale was made under that order; that a motion was made by the purchaser to have the sale set aside on the ground of alleged irregularities, etc.; and that the defendant here, being interested in the sale, opposed that motion and insisted upon a confirmation of the sale; that the sale was confirmed, and the purchaser — the plaintiff here — was obliged to pay and did pay the purchase price, $4,500, and a deed of the property was made to him. We have no question but that kind of á proceeding was appropriate and proper and in all respects legal. So that it follows that the sale made in this case, like the sale made in Jashenosky v. Volrath, supra, was a judicial sale, in the sense that it was a sale by the court, and required confirmation by the court in order to its completion.
The value of the property sold depended in a large measure upon the amount of oil that might be produced from the lands covered by the leases. The sale of the leases carried with it the right to produce the oil,.as authorized by the leases, and the purchaser obtained this right. If an appraisement was made in pursuance of the order of the court (whether this was done or not is not disclosed by the record), of course the value of the leases, in view of their productiveness or the contrary, must have been taken into consideration in making the appraisement.
The authorities cited by defendant in error to the effect that upon a sale of real estate the growing crops are not included, are not in point. Those decisions rest upon our appraisement laws, and the policy of our laws and of the courts to encourage agriculture, and not to pursue a course that will require farm lands to lie fallow and unproductive pending litigation, and upon the theory and rule that the land only is appraised and sold, and not the crops upon the land. But that is not true of the product of mines or of oil wells. In our judgment, in the case of the sale of leases of oil lands, the production belongs to the purchaser from the date that the sale is con *517 summated; and according to the decision in Jashenosky v. Volrath, supra, upon the sale being consummated, and perfected by confirmation, it relates back to the date that the sale was actually made by the officer of the court. The purchaser had no choice in the premises but to pay the money in pursuance of his bid. There was an option in the officer of the court, as the representative of the parties interested in the sale — that is, to say, the creditors — upon the purchaser making" an unreasonable delay, to return “no sale,” and not to permit the sale to be confirmed, and then to proceed to a re-sale, and to require the first purchaser to pay any loss that might result from the price upon the re-sale not being as great as the price upon the first sale, or to return the sale as made, and proceed by civil action against the purchaser to require him to pay the purchase money; or in case of a judicial sale like this, the court might proceed by attachment in contempt proceedings to require the purchaser to comply with the conditions of his purchase. Whether this doctrine of relation to date of sale applies in case of an execution sale not requiring confirmation where the consummation by payment of purchase money is subsequent to' date of sale, is a question not presented here.
Here the completion of the sale was insisted upon by the defendant in this case, and it was afterwards consummated by a confirmation and the payment of the purchase money. In our opinion the loss, if any, to this property, any deterioration occurring between the date of the sale and the date of the confirmation and payment of the purchase money, would fall upon the purchaser; and so, on the other hand, any gain, or fruitage, or appreciation, would belong to the purchaser. The defendant here remained in possession of and operated the premises during this period between the date, of sale and the date of the confirmation. It was not required to do so; perhaps strictly it had no right to do so, but it is not claimed in the petition that there was any mala Mes in the transaction. The plaintiff is willing to allow to it all costs and expenses incident to the operation, and only asks for the net proceeds accruing from'the sale of oil produced during this period. This we think the plaintiff has a right to require of the defendant; and we think, therefore, that the court of common pleas erred in sustaining the demurrer to this third amended petition. For that *518 reason the judgment of the court of common pleas will be reversed, -and the cause will be remanded, with instructions to the court to overrule the demurrer, and to proceed further in the case, as- may be required by law.
Chittenden & Chittenden and C. W. F. Kirkley, for Plaintiff in Error.
Ira C. Taber, for Defendant in Error.